COPY

Laurence M. Rosen, Esq. (SBN 219683)
THE ROSEN LAW FIRM, P.A.
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

FILED
12 MAY 25 PM 3:33
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEJANDRO PUENTE INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiff,<br><br>vs.<br><br>CHINACAST EDUCATION CORPORATION, RON CHAN TZE NGON, and ANTONIO SENA<br><br>Defendants. | CASE No.: CV 12-04621 JFW (PLAx)<br><br>COMPLAINT<br><br>CLASS ACTION<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Alejandro Puente ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against Defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding ChinaCast Education Corporation ("CAST" or the "Company"),

securities analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased the common stock of CAST between February 14, 2011 and April 2, 2012 inclusive, seeking to recover damages caused by Defendants' violations of federal securities laws.

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act, and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

3. This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. § 1331.

4. Venue is proper in this Judicial District pursuant to §27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b).

5. In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased CAST securities at artificially inflated prices during the Class Period and has been damaged thereby.

7. Defendant CAST is a Delaware corporation headquartered in Hong Kong. CAST, through its operating subsidiaries, provides post-secondary

education and e-learning services in China. The Company operates in two segments, E-learning and Training Service Group, and Traditional University Group. The E-learning and Training Service Group offers post secondary education distance learning services that enable universities and other higher learning institutions to provide nationwide real-time distance learning The Traditional University Group segment operates private residential universities that offer four-year bachelor's degree and three-year diploma programs in finance, economics, trade, tourism, advertising, IT, music, foreign languages, tourism, hospitality, computer engineering, law, and art field.

8. During the Class Period CAST's common stock was listed on the NASDAQ under ticker "CAST."

9. Defendant Ron Chan Tze Ngon ("Chan") was the Company's Chief Executive Officer ("CEO") and Chairman of the board of directors at all relevant times until March 26, 2012.

10. Defendant Antonio Sena ("Sena") served as Chief Financial Officer ("CFO") of CAST at all relevant times until March 26, 2012.

11. Chan and Sena are collectively referred to hereinafter as the "Individual Defendants".

## **PLAINTIFF'S CLASS ACTION ALLEGATIONS**

12. Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all persons who purchased the common stock of CAST during the Class Period and who were damaged thereby. Excluded from the Class are Defendants, the officers and directors of the Company at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

13. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, CAST's securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to

Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds of members in the proposed Class. Members of the Class may be identified from records maintained by CAST or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice customarily used in securities class actions.

14. Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

15. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

16. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of CAST; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

17. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## **SUBSTANTIVE ALLEGATIONS**

18. During the Class Period the Company had undisclosed deficiencies in its internal controls that permitted defendant Chan and others to engage in wrongful transfer of millions of dollars; the wrongful transfer of the Company's private colleges; and to engage in undisclosed related party transactions, rendering the Company's financial statements with the SEC false and misleading.

19. Starting from at least July 2011 and continuing through April 2012, defendant Chan transferred out over RMB760 million (approximately US$120 million) from the bank accounts of ChinaCast Technology (Shanghai) Limited ("CCT Shanghai") and Yupei Training Information Technology (Shanghai) Ltd. ("YPSH"). These transfers (the "Unlawful Transfers") were undisclosed to CAST shareholders and rendered the CAST periodic reports filed with the SEC and other public statements materially false and misleading.

20. Moreover, due to the Company's lack of internal controls over its operating subsidiaries during the Class Period—which were undisclosed, the Company's interests in its two private colleges, Lijian College ("LJC") and Hubei Industrial University Business College ("HIU"), were transferred to persons outside of the Company's group structure.

21. The public statements and periodic reports rendered materially false and misleading as a result of these undisclosed transfers were, among other things:

(a) February 14, 2011 shareholder letter: responding to concerns about the circumstances of Cast's acquisition of LJC and HIU, but failing to disclose the internal control deficiencies relating to Cast's ownership and control of LJC and HIU;

(b) March 16, 2011: CAST's 10-K for the fiscal year ended December 31, 2010, failing to disclose the internal control deficiencies relating to ChinaCast's ownership and control of LJC and HIU;

(c) August 9, 2011: CAST's press release, later filed on form 8-K with the SEC signed by defendant Sena, announcing raised financial guidance for the second half of the fiscal year ended December 31, 2011;

(d) November 9, 2011: CAST's 10-Q for the third quarter ended September 30, 2011 ("Q3 2011 10-Q"), filed with the SEC and signed by defendants Sena and Chan, which falsely set forth the Company's cash and cash equivalents;

(e) November 9, 2011: Sarbanes-Oxley Act of 2002 certifications accompanying the Q3 2011 10-Q separately signed by Chan and Sena attesting that they each disclosed "Any fraud, whether or not material, that involves management" to the Company's audit committee;

(f) November 9, 2011: CAST's press release announcing the Company';s third quarter ended September 30, 2011 financial results, which falsely set forth the Company's cash and bank balances; and

(g) December 9, 2011: CAST's shareholder letter signed by Chan further touting the Q3 2011 results and reiterating guidance for the year ended 2011.

**TRUTH BEGINS TO SLOWLY MATERIALIZE AND EMERGE**

22. The relevant truth began to enter the market and/or materialize through partial disclosures.

23. On October 3, 2011 the issued a letter to shareholders stating it was suspending its planned $50 million share buyback program and that it would hire a independent auditing firm to review its cash balances.

24. This announcement caused to the Company's stock to fall $1.06/share or 29.12% on October 3, 2011.

25. On October 4, 2011CAST issued a press release attempting to falsely reassure investors' concern that the delays in the Company's stock buy-back were due legitimate concerns about the Company's cash balances. The announcement states in relevant part:

> First, no question or concern has been raised by the Company's auditors, audit committee or any other relevant professional related to the Company's cash balances. As a result of several incidents that have been reported by auditors of other publicly held Chinese operating companies that have been

> unable to properly confirm cash balances, the Company will be engaging a third party service provider on a voluntary and proactive basis to conduct an independent confirmation in order to provide greater comfort to the marketplace on this issue and to differentiate the Company from those cases.
>
> Secondly, this effort bears no relation to the Company's stock repurchase program. Although the Company does not believe it will be able to accelerate repurchases under current price levels due to the constraints outlined in yesterday's shareholder letter, the Company does intend to continue repurchasing its shares subject to applicable blackout periods.

26. These false assurances caused the Company's stock to be rise to $3.10/share on October 5, 2011, or rise 21%.

27. On April 2, 2012, NASDAQ announced that trading was halted in CAST, effectively rendering CAST's shares illiquid and worthless, damaging investors.

28. That same day, filed 8-K with SEC, with an open letter Press Release, disclosing that Chan had been found refusing auditor's access to financial information, and unlawfully resisted his terminations by refusing to return key company property, including corporate chops necessary to run the business in China. Additionally, the Company also admitted that it had uncovered questionable activities and transactions which raise the specter of possible illegal conduct by Chan and his accomplices and may have led to the frustration of the audit of the Company's financial statements.

29. On April 19, 2012, CAST filed an 8-K with the SEC revealing additional findings that impacting the accuracy of the CAST's financial statements, including but not limited to, potentially undisclosed related party transactions, and the transfer of LJC and HIU.

30. On May 14, 2012, CAST filed an 8-K with the SEC revealing the Unlawful Transfers. The 8-K states in relevant part:

> **Investigations.** With respect to the Company's investigations into questionable activities involving Mr. Chan, Mr. Jiang and their associates, in addition to matters already disclosed in prior public filings, the Company's current management has discovered the following matters which remain under investigation:
>
> * * *
>
> the withdrawal of over Rmb760 million (approximately US$120 million) in cash from the bank accounts of CCT Shanghai and YPSH from July 2011 through April 2012 without the prior knowledge of the Company's Board of Directors. It is possible that some or all of the withdrawn cash could have been transferred to other Company accounts that the current management does not currently have access to or the cash could have been transferred out of the Company's control. The Company's current management team is continuing to try to obtain access to additional bank records and may find that significantly more unauthorized withdrawals may also have been made from the Company's other bank accounts. As disclosed in the Company's 10-Q for the quarterly period ended September 30, 2011 filed on November 9, 2011, the Company had cash and cash equivalents of Rmb482.3 million (US$75.4 million) and term deposits of Rmb605.0 million (US$94.5 million) as of September 30, 2011. As disclosed in the Company's 10-K/A for year ended December 31, 2010 filed on February 24, 2012, the Company had cash and cash equivalents of Rmb244.4 million (US$37.0 million) and term deposits of Rmb704.0 million (US$106.7 million) as of December 31, 2010. The Company is also investigating whether any of the cash from these undisclosed withdrawals was used to make unauthorized payments to persons or entities affiliated with Mr. Chan or Mr. Jiang; and

**Applicability of Presumption of Reliance:**

**Fraud-on-the-Market Doctrine**

31. At all relevant times, the market for CAST's common stock was an efficient market for the following reasons, among others:

(a) CAST's stock met the requirements for listing, and is listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b) During the class period, on average, over several hundreds of thousands of shares of CAST stock were traded on a weekly basis, demonstrating a very active and broad market for CAST stock and permitting a *very strong* presumption of an efficient market;

(c) CAST regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(d) CAST was followed by several securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms during the Class Period. Each of these reports was publicly available and entered the public marketplace;

(e) Numerous NASD member firms were active market-makers in CAST stock at all times during the Class Period; and

(f) Unexpected material news about CAST was rapidly reflected and incorporated into the Company's stock price during the Class Period.

32. As a result of the foregoing, the market for CAST's common stock promptly digested current information regarding CAST from all publicly available sources and reflected such information in CAST's stock price. Under these circumstances, all purchasers of CAST's common stock during the Class Period suffered similar injury through their purchase of CAST's common stock at artificially inflated prices, and a presumption of reliance applies.

## FIRST CLAIM

**Violation of Section 10(b) Of**

**The Exchange Act Against and Rule 10b-5**

**Promulgated Thereunder Against CAST and the Individual Defendants**

33. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

34. This claim is brought against CAST and all of the Individual Defendants.

35. During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including plaintiff and other Class members, as alleged herein; and (2) cause plaintiff and other members of the Class to purchase CAST's common stock at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

36. Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for CAST's common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

37. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of CAST as specified herein.

38. These Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of CAST's value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about CAST and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set

forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of CAST's common stock during the Class Period.

39. Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) the Individual Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) each of these defendants, by virtue of his or her responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's financial condition; (3) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (4) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

40. Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing CAST's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its common stock. As demonstrated by Defendants' overstatements and misstatements of the Company's financial condition throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking

those steps necessary to discover whether those statements were false or misleading.

41. As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of CAST's common stock was artificially inflated during the Class Period. In ignorance of the fact that market prices of CAST's publicly-traded common stock were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired CAST common stock during the Class Period at artificially high prices and were or will be damaged thereby.

42. At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding CAST's financial results, which were not disclosed by defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their CAST common stock, or, if they had acquired such common stock during the Class Period, they would not have done so at the artificially inflated prices that they paid.

43. By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

44. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period.

45. This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

## SECOND CLAIM

## Violation of Section 20(a) Of The Exchange Act Against the Individual Defendants

46. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

47. The Individual Defendants acted as controlling persons of CAST within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

48. In particular, each Defendant had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

49. As set forth above, CAST and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.

50. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

51. This action was filed within two years of discovery of the fraud and within five years of each Plaintiff's purchases of securities giving rise to the cause of action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action, designating Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Class Counsel;

(b) Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated May 25, 2012

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

Laurence M. Rosen, Esq. (SBN 219683)
THE ROSEN LAW FIRM, P.A.
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Counsel for Plaintiff