Laurence M. Rosen, Esq. (SBN 219683)
Phillip Kim, Esq. (*Pro Hac Vice*)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, California 90071
Telephone: (213) 785-2610
Facsimile:   (213) 226-4684
Email: lrosen@rosenlegal.com

*Co-Lead Counsel for Lead Plaintiff*

[Additional Counsel of Record Are Listed on the Signature Page]

# UNITED STATED DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE CHINACAST EDUCATION CORPORATION SECURITIES LITIGATION** | Case No. CV 12-4621-JFW (PLAx)<br><br>CLASS ACTION<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT CHINACAST EDUCATION CORPORATION**<br><br>**Hon. John F. Walter**<br>**Date: November 14, 2016**<br>**Time: 1:30 p.m.**<br>**Courtroom: 16** |

Pursuant to Rule 55(b) of the Federal Rules of Civil Procedure Lead Plaintiff Jayhawk Private Equity Fund II, L.P. and the Class apply for entry of default against Defendant ChinaCast Education Corporation ("CAST" or the "Company") upon the Court's Order granting Plaintiffs' Motion for Entry of Default Against CAST and entry of default on August 30, 2016. (Dkts # 79 and #80).

This Motion is based on the following Memorandum of Points and Authorities, the supporting Expert Report of Peter Lert, Ph.D., CFA ("Lert Report") as to the damages proximately caused by CAST's securities fraud as alleged in the Consolidated Class Action Complaint ("Complaint"), all relevant portions of the files and records in the action, and on such other matters as may properly come before the court at the presentation and hearing of this Motion. A copy of the Lert Report is listed as Exhibit 1 to the Declaration of Laurence M. Rosen in Support of Application For Entry of Default Judgment Against Chinacast Education Corporation and was previously submitted as Exhibit 2 to the Declaration of Laurence M. Rosen in Support of Plaintiff's Motion For Class Certification and Appointment of Class Representatives and Class Counsel (Docket #83).

As set forth below and as supported in Lert Report, Lead Plaintiff and the Class seek judgment against CAST for monetary damages in the amount of $65.8 million.

## I.   CASE SUMMARY

### a.  Party Identification

The Plaintiff is Class Representative Jayhawk Private Equity Fund II, L.P. ("Plaintiff" or "Class Representative") who brings claims on behalf of a certified class of all persons or entities who purchased or otherwise acquired the common stock of CAST during the Period from February 14, 2011 and April 2, 2012 inclusive (the "Class Period") and who were injured when disclosure of defendants' fraud caused CAST's share price to decline.

The initial Defendants were: (1) Chinacast Education Corporation; (2) Ron Chan

1

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT CHINACAST EDUCATION CORPORATION
No. CV-12-4621-JFW (PLAx)

Tze Ngon ("Chan"), the Company's Executive Officer ("CEO") and Chairman of the Board from 1999 until March 26, 2012.; (3) Defendant Antonio Sena ("Sena"), Chief Financial Officer ("CFO") of CAST from 2007 until March 27, 2012; (4) Michael Santos ("Santos"), a member of the Board, President of International, and Executive Director from 2009 until his resignation from the Board on March 19, 2012; (5) Justin Tang ("Tang"), a member of the Board and the Audit Committee from 2007 until January 17, 2012; (6) Daniel Tseung ("Tseung"), a member of the Board during the time of the alleged securities law violations; (7) Ned Sherwood ("Sherwood"), a member of the Board during the time of the alleged securities law violations; (8) Stephen Markscheid ("Markscheid"), a member of the Board from October 3, 2011through the Class Period; and (9) Derek Feng ("Feng"), a member of the Board from January 17, 2012 through the Class Period.[1]

The claims against Sherwood, Markscheid, Feng, Tseung were terminated on February 22, 2016.

### b. Procedural history

On May 25, 2012, Plaintiff sued CAST for violating Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5). Additional claims arise under Sections 11, 12(a)(2) and 15 of the Securities Act (15 U.S.C. §§77k and 77o).

On June 18, 2012, CAST was served with a notice of the lawsuit through its Process Agent Heather Konesey. See Dkt #9.[2]

On September 17, 2012, Plaintiff filed the Consolidated Amended Complaint in above captioned action. (Dkt. #42).

---

[1] Plaintiffs have not been able to locate and serve Defendants Chan, Sena, Santos and Tang, who are believed to reside in China. Therefore, Chan, Sena, Santos and Tang have not participated in the action.

[2] Citations to "Dkt #__" are to entries on the docket.

2

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT CHINACAST EDUCATION CORPORATION
No. CV-12-4621-JFW (PLAx)

On October 15, 2012, a Notice of Motion and Motion to Dismiss was filed by CAST. CAST was represented by Fried, Frank, Harris, Shriver & Jacobson LLP ("Fried Frank") and Lamb & Kawakami LLP ("Lamb & Kawakami") . (Dkt. #44).

On December 7, 2012, the Court granted CAST's Motion to Dismiss with prejudice. (Dkt. #55).

On December 10, 2012, Plaintiff filed the Notice of Appeal in the United States Court of Appeals for the Ninth Circuit. (Dkt. #56).

On October 23, 2015, the United States Court of Appeals for the Ninth Circuit issued a judgment, reversing the Court's order dismissing this case with prejudice under Rule 12(b)(6). (Dkt. #58).

On January 12, 2016, counsel for CAST Fried Frank and Lamb & Kawakami filed a Motion to Withdraw as counsel for CAST. (Dkt. #68).

On February 9, 2016, the Court granted the Motion to Withdraw as counsel and relieved Fried, Frank and Lamb & Kawakami as counsel of record for CAST. (Dkt. #72). Pursuant to the Court's order, its counsel, Fried Frank, notified CAST of the requirement that it must retain new counsel and that failure to do so would result in "default on the obligations established [in the Scheduling and Case Management Order] and that a default judgment may result". Dkt. # 73 ¶6.

As of this date, Defendant CAST has not retained replacement counsel or provided any explanations as to such failure. (Rosen Dec., ¶11). [1]

On August 30, 2016, the Court granted the Motion and directed Plaintiff to file Motion for Entry of Default Judgment Against CAST by September 9, 2016. (Dkt. #79).

On August 30, 2016, the Clerk of Court entered default. (Dkt. #80).

---

[1] Citations to "Rosen Dec. Ex. ___" are to Exhibits to the Declaration of Laurence M. Rosen in Support of Plaintiff's Motion for Entry of Default against Defendant ChinaCast Education Corporation, filed herewith.

3

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT CHINACAST EDUCATION CORPORATION
No. CV-12-4621-JFW (PLAx)

On September 23, 2016, Plaintiff moved for class certification under Federal Rule of Civil Procedure 23 and the appointment of Plaintiff as a class representative, and the appointment of Rosen Law Firm PA and Pomerantz LLC as class counsel. (Dkt. #81). Plaintiff seek to have the Class certified prior to entry of a default judgment on behalf of the Class.

### c. Nature of claims against CAST

The Complaint alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder against CAST. (Complaint ¶1).

At the beginning of the Class Period CAST's common stock was actively traded on the NASDAQ Global Select Market, and investors believed the Company to be a profitable and growing company engaged in providing post-secondary education and e-Learning services in the People's Republic of China.   (Complaint ¶2).

The Company purports to provide post-secondary degree and diploma programs through its three universities in China: the Foreign Trade and Business College of Chongqing Normal University ("FTBC"), the Lijiang College of Guangxi Normal University ("Lijiang") and the Hubei Industrial University Business College ("HIUBC"). The Company's E-learning and Training Service Group ("ELG") provides services such as interactive distance learning applications, multimedia education content delivery, and vocational training courses. ¶2.

During June 2011 to April 2012, CAST had transferred more than RMB 760 million (approximately $120 million) in cash to CAST Chairman and CEO Ron Chan Tze Ngon ("Chan") and other Company insiders including President of China Operations, Jiang Xiangyuan (collectively "Chan and Affiliates"), for their personal financial gain. ¶¶4, 29. CAST had not disclosed such material related party transactions until May 14, 2012. ¶29. CAST's undisclosed material related party transactions also include permitting a CAST Vice President to misappropriate Company assets and engage in loan

4

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT CHINACAST EDUCATION CORPORATION
No. CV-12-4621-JFW (PLAx)

fraud from 2009 to 2012. ¶¶10,72,108; permitting the same Vice President to transfer over $5.6 million of Company funds to his son¶¶10,74; permitting Chan and Affiliates to unlawfully transfer control of two of CAST's private colleges, Liajiang and HIUBC, outside of the Company. ¶¶10,70,102,108; and permitting undisclosed loans to third parties secured by Company assets, including a $37 million pledge of Company funds to secure a loan to parties unrelated to the Company. ¶¶10,75. Despite the independent auditor's warning about CAST's material internal control weakness and the Board and Audit Committee's express duty to review related party transactions, Defendants either knowingly or in a deliberately reckless manner turned a blind eye to CAST's ongoing material related party transactions and severe internal control deficiencies detrimental to the Company. ¶¶62-65. These undisclosed related party transactions and material internal control deficiencies rendered the Company's financial statements filed with the SEC materially false and misleading on two independent grounds, (a) the financial statements misstated the Company's true cash and asset balances; and (b) the failure to disclose material related party transactions rendered CAST's financial statements materially false and misleading under Generally Accepted Accounting Principles ("GAAP") and SEC regulations. ¶8.

When the the related party transactions was disclosed publicly, CAST's share price declined with each corresponding disclosure, resulting in losses to investors. On May 14, 2012, CAST announced for the first time the $120 million cash transfer by CAST to Chan and Affiliates beginning in at least June 2011 and continuing through April 2012 and also warned that there may have been additional previously undisclosed transfers from CAST's other bank accounts and that CAST's investigation was ongoing. ¶29. On July 30, 2012, Defendants admitted that such undisclosed material related party transactions were "readily identifiable," occurred "almost daily," each involved "significant inflows and outflows of cash," and were unconnected and inconsistent with CAST's revenue collection and expenditure operations. ¶¶29,109.

On April 2, 2012, the Company announced that on March 27, 2012, it had received a letter from the NASDAQ advising that it was no longer in compliance with NASDAQ reporting requirements. ¶99. On June 12, 2015, the Securities and Exchange Committee ("SEC") revoked the registration of Cast securities for failure to timely file required periodic reports with the SEC. *See* Rosen Decl., Ex. 1.

## II.   ARGUMENT

### a. Applicable Legal Authority Supports Entry of Default Judgment

Upon default, the factual allegations of the complaint, except those relating to the amount of damages, are taken as true. *TeleVideo Systems, Inc. vs. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987). The default itself establishes the defendant's liability. "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) (citing *Pope v. United States*, 323 U.S. 1, 12, 65 S.Ct. 16, 89 L.Ed. 3 (1944); *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)).

Liability determination includes admission of proximate cause properly alleged in the complaint. "Plaintiff's burden in 'proving up' damages is relatively lenient. If proximate cause is properly alleged in the complaint, it is admitted upon default." *Philip Morris USA, Inc. v. Castworld Prod., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L Realty Corp.*, 973 F.2d 155, 159 (2d Cir.1992)). The fact of injury is thus established and the plaintiff is required only to prove that the "compensation sought relates to the damages that naturally flow from the injuries pled. *Id.*, (citing *Wu v. Ip,* No. C93–4467 FMS, 1996 WL 428342, at *1 (N.D.Cal.1996) (internal citation omitted). Moreover, since default establishes liability, it also precludes affirmative defenses. *See, Rubicon Glob. Ventures, Inc. v. Chongquing Zongshen Grp. Imp./Exp. Corp.*, 630 F. App'x 655, 657–58 (9th Cir. 2015).

Factors to be considered in determining whether to grant a default judgment are: (1) the substantive merits of the claim; the sufficiency of the complaint; (2) the amount

6

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT CHINACAST EDUCATION CORPORATION
No. CV-12-4621-JFW (PLAx)

of money at stake; (3) the possibility of prejudice to plaintiff if relief is denied; (4) the possibility of dispute as to any material facts; (5) whether default resulted from excusable neglect; and (6) the strong federal policy favoring decisions on the merits. *Eitel vs. McCool*, 782 F.2d 1470, 171-72 (9th Cir. 1986). The hard decisions occur when the defendant disputes the plaintiff's effort to obtain default judgment, as where the claim's merits were doubtful and the defendant's failure to answer was excusable neglect in light of ongoing settlement negotiations, *Id*. Such factors are not present here and all of the relevant factors favor entry of default.

### i. Plaintiff's Claims are Legally Sufficient and Has Substantive Merit

On its face the Consolidated Class Action Complaint has substantive merit. Although the Court granted CAST's Motion to Dismiss with prejudice, the United States Court of Appeals for the Ninth Circuit issued a judgment, reversing the Court's order dismissing this case with prejudice under Rule 12(b)(6).

### ii. The Amount at Stake Does Not Support Denial of Relief

The amount at stake is substantial: $65.8 million. But the amount at stake in any securities fraud class action will be substantial. For a securities class action, the amount at issue here is likely on the low side. Moreover, as with the other factors the courts consider, the amount-at-stake factor appears to usually be considered in the context of the defendant either opposing a motion for default judgment or moving to have it set aside. In such cases, where the amount involved is substantial, the courts are more cautious in granting default relief. But this factor bears little significance where the defendant, as CAST has here, initially retained counsel, filed a motion to dismiss and defended an appeal, but then inexplicably severed its relationship with its attorneys who have withdrawn from the case.  And although its attorneys notified CAST of the consequences of not obtaining replacement counsel, CAST has failed to answer the complaint, and has not retained replacement counsel. Nor has CAST provided any

explanation for such failure. It has remained completely silent and not filed anything in this action since its attorneys withdrew.   CAST has intentionally shown it has no desire to continue defending this lawsuit.

### iii.   Plaintiff and the Class Are Substantially Prejudiced by the Delay

Nine months have passed since CAST's previous counsel filed the Notice to Withdraw. There is no possibility that CAST will join the issues and permit Plaintiff to litigate this case to a conclusion against it; it has simply disappeared from this litigation. CAST has made its intention clear that it has no desire to continue defending this lawsuit

This case was filed over four years ago and Plaintiff and the Class still have received no recompense for their losses incurred when CAST's share price was decimated by CAST's concealed Related Party Transactions. Plaintiffs and the Class are entitled to a default judgment because "[i]f Plaintiffs' motion for default judgment is not granted, Plaintiff will likely be without other recourse for recovery". *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177.

### iv.   Material Facts in this Case are Not Disputable

"Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages. Accordingly, no genuine dispute of material facts would preclude granting Plaintiffs' motion." *PepsiCo Inc.*, 238 F. Supp. 2d at 1177.
*Here,* Plaintiff filed a well-pleaded complaint alleging the facts necessary to establish its claims, and the Court granted their motion of entry of default and Clerk entered default against CAST. Therefore, this factor favors entry of default judgment.

### v.   There is No Excusable Neglect

CAST has intentionally abandoned defense of this lawsuit. It was properly served with the summons and complaints. It retained counsel who filed a motion to dismiss and then defended an appeal to the Ninth Circuit. After the case was remanded its counsel withdrew from the action.  Its counsel notified CAST of the requirement that it must retain new counsel and that failure to do so would result in "default on the obligations

established [in the Scheduling and Case Management Order] and that a default judgment may result". Dkt. # 73 ¶6. Nonetheless, CAST has failed to retain replacement counsel and neglected to answer the Complaint, and has shown no indications that it will continue to defend this lawsuit. Rosen Declaration ¶ 11. Nor has it made any filings in this action since its counsel withdrew. "Given Defendant's early participation in the matter, the possibility of excusable neglect is remote". *PepsiCo, Inc.*, 238 F. Supp. at 1177. CAST's actions are not due to mere "excusable neglect" but willfulness.

### vi. Federal Policy Does Not Suggest That Relief Should be Denied

The instant proceeding does not subvert the policy that favors merits disposition of a legal dispute. Plaintiff's only choices are to totally abandon the action against CAST, to the class members' substantial prejudice, or to seek finality in the form of a default judgment.

### b. The Class is Entitled to $65.8 Million in Compensatory Damages

Expert opinion evidence is the proper method for establishing damages in cases involving securities fraud. *See generally,* Rule 702, *Federal Rules of Evidence*, which permits a witness to testify as an expert where the court determines that "specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." However, [i]t is well settled that a default judgment for money may not be entered without a hearing unless the amount claimed is a liquidated sum or capable of mathematical calculation." *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981)

The Lert Report sets forth aggregate class-wide damages, the entire amount of which is properly attributable to the misconduct of the defaulting defendant CAST under the securities laws. The Lert Report's aggregate damages analysis is based upon an event study of the dates on which CAST's share price declined as a result of disclosure of the fraud which proves that Defendants' omissions of material fact caused the price of CAST stock to be artificially inflated, and that the corrective disclosures caused the

9

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT CHINACAST EDUCATION CORPORATION
No. CV-12-4621-JFW (PLAx)

inflation to dissipate, which in turn caused price declines in CAST stock and corresponding investor losses. Lert Report ¶¶ 141-149.

Dr. Lert analyzed the price and volume behavior of CAST stock, and reviewed market data, Company press releases, conference call transcripts, equity analyst reports, new articles, SEC filings and the performance of CAST's industry. *Id* at ¶2. Lert determined the amount of artificial inflation in the price of CAST stock over the course of the Class Period, resulting from the alleged omissions. *Id*. at ¶¶141-149. Dr. Lert empirically proved that when the truth about the Company's undisclosed related party transactions and poor internal controls emerged, this caused the Company's stock price to decline, and the artificial inflation to correspondingly dissipate. *Id*. at ¶¶148, 149. Dr. Lert demonstrated this by performing an event study, which examines whether and to what extent the price of a security reacts to the release of new information, and in particular the information disclosing Defendants' fraud. *Id.* at ¶ 95.

An event study analysis is a commonly accepted methodology employed by finance researchers for determining how much of a stock price change cannot be explained by market and sector factors and how much of a stock price movement is caused by company-specific information. *Id.* at ¶¶88-89. Dr. Lert's event study determined that the price of CAST stock declined in a statistically significant manner in response to two corrective disclosures, indicating that the alleged fraud was the cause of CAST's stock price decline on the dates of those corrective disclosures. Dr. Lert determined the amount of artificial inflation present in CAST stock by constructing an inflation ribbon, or time series indicating how much artificial inflation caused by the alleged fraud was in the stock price on each day during the Class Period and accounting for the dissipation in the artificial inflation with the fall in stock price corresponding to each corrective disclosure. *Id.* at ¶¶145-147. Dr. Lert concluded that aggregate class-wide damages to investors who purchased CAST common stock, estimated

10

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT CHINACAST EDUCATION CORPORATION
No. CV-12-4621-JFW (PLAx)

conservatively using the PSLRA investment loss cap[12] to shares sold during the Class Period as well as afterward, are $65.8 million. *Id.*, at ¶173.   The Lert Report applies the measure of damages generally applied in Section 10(b) cases: that is the reduction in dollar inflation over an investor's holding period. *Id*. at ¶¶115.   Dr. Lert's per share damages analysis is in turn based on the Supreme Court's decision in *Dura Pharmaceuticals*. *Id.* at ¶151. Dr. Lert then aggregated damages using the institutional trading model. *Id*. at ¶¶159-174.

The damages analysis set forth in the Lert Report and the conclusions Dr. Lert reached should be accepted by this Court in entering a default judgment in the amount of $65.8 million. First, Dr. Lert has significant relevant experience and is highly credentialed. Dr. Lert holds both a Ph.D. and a Chartered Financial Analyst ("CFA") designation. Lert Report ¶10.   Dr. Lert has over 24 years of experience in the financial services industry, over 10 years of experience as a Portfolio Manager, and has developed and applied quantitative investment strategies and analytics for over 23 years.   *Id*. at ¶5. Dr. Lert also have Federal government experience with the U.S. Securities and Exchange Commission and the U.S. Congress. *Id*. at ¶5. Dr. Lert established and led the research and analysis effort at Fidelity for over 10 years, establishing performance measures for improved trading in his role as the Manager of Trading Analysis Services. *Id*. at ¶7. Additionally, Dr. Lert is an active member of the CFA Institute and the Boston Security Analysts Society and taught for over five years at its CFA Review Program. *Id.* at ¶14. Dr. Lert has also authored several publications and articles in the field of finance. *Id*. at ¶¶16-18.

---

[1]

[2]   The PSLRA caps damages on an investment loss based on the price paid for the stock and the market price for the stock subsequent to the disclosure:   "[T]he award of damages to the plaintiff shall not exceed the difference between the purchase..[price]… and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market." 15 U.S.C. 78u-4(e)(2).

11

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT CHINACAST EDUCATION CORPORATION
No. CV-12-4621-JFW (PLAx)

Second, the aggregate damages analysis and the institutional trading model, assuming Last-In First-Out ("LIFO") matching between sold and purchased shares, presented in the Lert Report is a conservative method commonly used to provide estimates of aggregate damages in applicable securities cases and is the method favored by a majority of courts . Lert Report,¶25, 172.

## A. Conclusion

WHEREFORE, Plaintiff prays that the Court grant this Motion and that it enters judgment for the class in the amount of $65.8 million plus allowable costs and with post-judgment interest and the rate allowed by law.

Dated: September 23, 2016         Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

/s/ Laurence M. Rosen
Laurence Rosen (SBN 219783)
Phillip Kim (*pro hac vice*)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
lrosen@rosenlegal.com
pkim@rosenlegal.com

-and-

**POMERANTZ LLP**
Marc I. Gross
Jeremy A. Lieberman
600 Third Avenue - 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
migross@pomlaw.com

12

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT CHINACAST EDUCATION CORPORATION
No. CV-12-4621-JFW (PLAx)

jalieberman@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
Ten South LaSalle Street - Suite 3505
Chicago, Illinois 60603
Telephone:    (312) 377-1181
Facsimile:    (312) 377-1184
pdahlstrom@pomlaw.com

13

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT CHINACAST EDUCATION CORPORATION
No. CV-12-4621-JFW (PLAx)

## CERTIFICATE OF SERVICE

I, Laurence M. Rosen, hereby declare under penalty of perjury as follows:

I am the managing attorney of the Rosen Law Firm, P.A., with offices at 355 South Grand Avenue, Suite 2450, Los Angeles, CA 90071. I am over the age of eighteen.

On September 23, 2016, I electronically filed the following PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT CHINACAST EDUCATION CORPORATION with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record. Service was also made on ChinaCast Education Corporation (1) by First-Class mail and by FedEx International Priority mail at its current address ChinaCast Education Corporation, 2000 Pudong Avenue, Room 505, Pudong, Shanghai 200135, China and (2) by serving its registered agent National Corporate Research, Ltd., 850 New Burton Road Suite 201, Dover, DE 19904.

Executed on September 23, 2016.

/s/ Laurence M. Rosen
Laurence M. Rosen

14

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT CHINACAST EDUCATION CORPORATION
No. CV-12-4621-JFW (PLAx)